**In re Ronald WALLER and Joann Waller, Debtors.**

**No. 05–50788–JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 29, 2005.

Ronald and Joann Waller, Macon, GA, pro se.

Camille Hope, Macon, GA, for trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Debtors' motion to recuse Judge and Chapter 13 Trustee. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(O). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtors Ronald and Joann Waller filed a Chapter 13 petition on February 28, 2005. It was their fourth Chapter 13 petition in five years. Each of their three previous cases were dismissed prior to completion. Case number 01–50817–RFH was filed February 26, 2001, dismissed February 13, 2002, and closed on August 20, 2002. Case number 02–51230–JDW was filed on March 20, 2002, dismissed on June 13, 2002, and closed on October 11, 2002. The Court abstained in this case because Debtors were apparently disputing the validity of their sole debt and were not trying to reorganize any debt. The result of abstention was dismissal for lack of jurisdiction. Case number 02–53304–RFH was filed on August 5, 2002, dismissed on September 9, 2002, and closed on December 6, 2002.

When they filed the current case, Debtors paid $50 dollars toward the $194 filing fee. At that time, Debtors also filed an application to pay the filing fee in installments. On March 1, 2005, the Court entered an order denying the application and ordering Debtors to pay the balance due within 10 days of the order. The order was issued because in previous case No. 02–53304, Debtors were granted permission to pay filing fees in installments. However, Debtors quit making the installment payments, leaving an unpaid balance, after voluntarily dismissing the case. Debtors complied with the order in the present case by paying the outstanding balance of $144 on March 11, 2005.

Prior to filing the current case, Debtors sued First National Investments, LLC twice in state court and once in federal district court in connection with a debt allegedly owed to First National and secured by Debtors' residence. The first state court case was dismissed for improper service. The second case went to trial

before a jury, and the court granted a directed verdict to First National. Both cases resulted in a temporary injunction of proceedings initiated by First National to foreclose on Debtors' house. The federal case was dismissed as frivolous. Those cases, in addition to the prior bankruptcy filings amount to at least five foreclosure proceedings stayed by a state or federal court order.

After all those cases had been resolved, First National attempted its sixth foreclosure, with the auction scheduled for March 1, 2005. Debtors tried to stall that foreclosure by filing their current Chapter 13 case. Nevertheless, because First National's counsel was unable to verify Debtors' bankruptcy filing after being notified of the case number, First National proceeded with the sale. First National later sought and was granted a retroactive annulment of the automatic stay and validation of the sale.

On March 11, 2005, Debtors filed a motion to recuse the Bankruptcy Judge and the Chapter 13 Trustee, Camille Hope, due to their "concerted efforts to deny the debtors bankruptcy protections of automatic stay" and because they "acted in concert to deny the debtors the opportunity to dispute the creditors [sic] liens ... in 2001, 2002, and again in 2005." (Mot. to Recuse, at 1.) For the following reasons, the motion will be denied.

### Conclusions of Law

*Disqualification of Judge*

■ Pursuant to Federal Rule of Bankruptcy Procedure 5004(a), "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case." Section 455 of title 28 provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a) (West Supp.2004). The statute also provides for disqualification when the judge has a personal interest in the case. *Id.* § 455(b). Debtors have not alleged, nor am I aware of, any personal interest in this case. Thus, the issue is "whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned." *Byrne v. Nezhat,* 261 F.3d 1075, 1101 (11th Cir.2001).

■ The Supreme Court set forth an analytical framework for this question in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The Court held that, except in rare circumstances, the bias complained of must derive from an extrajudicial source. The Court stated as follows:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* at 555, 114 S.Ct. at 1157.

■ In their recusal motion, Debtors set forth a number of specific complaints

against me, which they framed as follows: First, I granted retroactive stay relief to First National to validate its foreclosure sale even though its counsel had been notified of Debtors' bankruptcy filing prior to the foreclosure sale. Second, I granted retroactive stay relief to First National knowing that it had violated the Fair Debt Collection Practices Act ("FDCPA"). Third, I caused Debtors a financial hardship by denying their motion to pay their filing fees in installments and ordering their case to be dismissed if the fees were not paid in full. Fourth, I dismissed Debtors' March 2002 Chapter 13 case due to lack of jurisdiction over the adversary proceedings that had been filed in accordance with Federal Rule of Bankruptcy Procedure 7001(2), which allowed First National to move forward with "illegal" foreclosure proceedings. In summary, I have repeatedly ruled against Debtors. This is not evidence of bias, however; it is evidence that the facts and the law are not in Debtors' favor.

As to Debtors' first allegation-that I improperly granted retroactive stay relief-the Bankruptcy Code allows for retroactive stay relief in appropriate circumstances. As my announcement at the conclusion of the hearing on motion for stay relief and my subsequent opinion indicated, I found the circumstances to be appropriate because Debtors' sole reason for filing bankruptcy was to hinder and delay First National's foreclosure efforts.

As to Debtors' second allegation-that I improperly granted stay relief knowing that First National violated the FDCPA-such circumstances are not relevant to stay relief. Debtors have repeatedly made allegations about violations of the FDCPA, and have filed an adversary proceeding in this bankruptcy case that reasserts those allegations. However, the adversary proceeding has not advanced beyond the pleadings stage, and this issue has never been litigated to conclusion in any court. Even assuming the allegations are true, they are not a basis for denying stay relief. Debtors must look to the remedies provided by the FDCPA if that Act has been violated.

As to Debtors' third allegation-that I denied their application to pay filing fees in installments-that denial was consistent with my policy to deny the installment plan to any debtor who has failed to comply with such a plan in a previous case. In a previous Chapter 13 case, Debtors voluntarily dismissed their case and failed to pay installments that came due after the dismissal. Their previous actions informed my decision, but that does not constitute bias. It merely shows that I was weighing the only evidence available as to the likelihood of Debtors' paying filing fees in full if allowed to pay in installments.

As to Debtors' fourth allegation-that my dismissal of a previous case for lack of jurisdiction allowed First National to make five "illegal" attempts at foreclosure-such an argument is nonsensical. The Court granted a motion to abstain in that case because Debtors had no debt to reorganize (other than the First National debt) and were merely shopping for a favorable forum in which to dispute the First National mortgage. Debtors apparently do not fully understand the concept of abstention. By abstaining, the Court did not prevent Debtors from litigating the issue of the legality of the foreclosure, it merely directed the issue to the proper forum, the state court.

All of Debtors' complaints are based on my judicial rulings. As explained by the Supreme Court, the only time such rulings can form the basis for recusal is when they "display[ ] deep-seated and unequivocal antagonism that would render fair judgment

impossible." *Liteky,* 510 U.S. at 556, 114 S.Ct. at 1158. Debtors have shown no such evidence. They have only argued that the consequences of my rulings have been unfair, which makes them no different from any other party on the losing side of a court case. In such circumstances, a reasonable person would not conclude that my impartiality could be questioned. Thus, the motion to recuse the judge will be denied.

### Removal of Chapter 13 Trustee

The Court may only consider removal of a trustee after notice and a hearing. 11 U.S.C.A. § 324(a) (West 2004). Therefore, the Court will schedule a hearing date and order notice to be sent to all interested parties. At that hearing, the burden will be on Debtors to prove specific facts that demonstrate "cause" to remove Ms. Hope. *Alexander v. Jensen–Carter (In re Alexander)*, 289 B.R. 711, 714 (8th Cir. BAP 2003). Conclusory allegations will not suffice. *Id.* "Causes for removal include situations in which the trustee is found to be incompetent or unwilling to perform the duties of a trustee; the trustee is not disinterested or holds an interest adverse to the estate; the trustee violates the fiduciary duty to the estate; and where the trustee is guilty of misconduct in office or personal misconduct." 3 Collier on Bankruptcy ¶ 324.02 (15th ed. rev'd 2004) (footnotes omitted). The Court will defer ruling on Debtor's motion with respect to Ms. Hope until after the hearing.